IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

LOUANA M. MARTINEZ,

    Plaintiff,

v.                                                                                                                                 No. 1:16-cv-01392 SCY

NANCY A. BERRYHILL,[1]
*Acting Commissioner of the*
*Social Security Administration*,

    Defendant.

## MEMORANDUM OPINION AND ORDER
## DENYING PLAINTIFF'S MOTION TO REMAND

**THIS MATTER** is before the Court on Plaintiff Louana Martinez's Motion to Reverse and Remand the Social Security Commissioner's final decision denying Plaintiff's applications for a period of disability, disability insurance benefits, and supplemental security income. Doc. 19. The Court concludes that the ALJ did not err in his consideration of Plaintiff's headache disorder. Therefore, the Court will **deny** Plaintiff's motion.

**I.    BACKGROUND**

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on August 17, 2014 and a Title XVI application for supplemental security income on February 5, 2015. Administrative Record ("AR") 103-104. She alleged a disability onset date of August 17, 2014. AR 18. After her claim was denied on initial review and upon reconsideration, her case was set for a hearing in front of an ALJ on June 27, 2016. *Id.*

Because Plaintiff's arguments concern the ALJ's consideration of her headache disorder,

---

[1] Nancy A. Berryhill, who is now the Acting Commissioner of the Social Security Administration, is substituted for Acting Commissioner Carolyn W. Colvin under Rule 25(d) of the Federal Rules of Civil Procedure.

1

the Court only sets forth the relevant background regarding this particular impairment.

## A. Relevant Medical History

Plaintiff testified during the hearing before the ALJ that her headaches began after she was in a car accident in March 2013. AR 41. Plaintiff stated that she sought treatment for the headaches following the accident, which included seeing a chiropractor. AR 40-41. After the accident, Plaintiff continued working full-time throughout 2014 and a few months into 2015. *Id*. She testified that she ultimately stopped working due to the headaches and indicated that she can no longer work full-time because the "headaches are very debilitating." AR 40, 44.

Plaintiff's medical records show that on September 11, 2015, she sought treatment from Dr. Barbara Bath, M.D. for recurring migraine headaches. AR 443-447. Plaintiff reported to Dr. Bath that the severity of the headaches was moderate, that the headaches were recurring in nature and affected her entire head, and that they were alleviated by darkness, over-the-counter medicines, and herbal oil on neck. AR 443. Plaintiff also reported symptoms of dizziness, nausea, phonophobia, photophobia, and neck stiffness associated with the headaches. *Id*. Dr. Bath diagnosed Plaintiff with headache disorder and prescribed Amitriptyline to treat the headaches. AR 448. Dr. Bath also advised Plaintiff to take Ibuprofen as needed for the headaches and scheduled a follow-up appointment in one month. *Id*. At this follow-up appointment on November 12, 2015, Plaintiff reported improvement in her condition and further indicated that Amitriptyline was helping with the migraine headaches. AR 452-54. This improvement in her condition was reflected in her reporting to Dr. Bath that she no longer had nausea, phonophobia, photophobia, neck stiffness, vertigo, or diplopia symptoms in connection with the headaches. AR 452. Dr. Bath advised Plaintiff to continue taking Amitriptyline. AR 454-55.

Approximately six months after seeing Dr. Bath, Plaintiff sought treatment for her

headaches from another provider, Dr. Vanessa Licona-Sanjuan, M.D. AR 496. At her initial visit on May 24, 2016, Plaintiff indicated to Dr. Licona-Sanjuan that the headaches were moderate to severe in nature, occurred daily, and lasted at least one hour in duration. *Id*. Plaintiff described the headaches as a "throbbing sensation aggravated by noise, stress, light" and associated with "blurry vision, dizziness, [and] tingling involving both hands." *Id*. Plaintiff reported to Dr. Licona-Sanjuan that she had taken Amitriptyline for the headaches the previous year which resulted in an "improvement of the intensity and frequency of headaches." *Id*. Dr. Licona-Sanjuan directed Plaintiff to start taking Amitriptyline at the previously prescribed dosage, 25 mg, and if tolerated for five days, to double the dose to 50 mg. AR 498-99. Dr. Licona-Sanjuan also prescribed Prednisone, Maxalt and/or Naproxen, as needed for the headaches. *Id*.

Approximately one month after her appointment with Dr. Licona-Sanjuan, Plaintiff appeared for the June 27, 2016 hearing before the ALJ. At the hearing, Plaintiff testified that her headaches occur on a daily basis, last all day, and she gets "little relief" from the medications she takes for the headaches. AR 45-46. Plaintiff indicated that during a headache she has to isolate herself, stay away from bright lights, stay in a room with air conditioning, avoid noise, and use heat or cold packs. AR 46-47. Plaintiff testified that her pain level due to the headaches is 9 out of 10 on a daily basis, even with the use of medication. AR 47. Plaintiff also testified that the headaches make it difficult to do household chores and she requires assistance from her family. AR 48. Plaintiff further indicated that she stays in bed all day "maybe two times a week" due to the headaches. AR 48-49.

Shortly after the hearing, on July 6, 2016, Plaintiff saw Dr. Licona-Sanjuan for a follow-up evaluation of her headaches. AR 492. Plaintiff reported "significant improvement of frequency and intensity" of her headaches as a result of the increased dosage of Amitriptyline.

*Id*. Dr. Licona-Sanjuan directed Plaintiff to continue taking Amitriptyline, and added another medication, Sumatriptan, to be taken as needed for migraines. AR 494. Plaintiff was also directed to follow-up with Dr. Licona-Sanjuan in one year. *Id.*

At the time of the hearing before the ALJ, Plaintiff's records from her initial visit with Dr. Licona-Sanjuan were not part of the administrative record. The ALJ, however, kept the record open for 15 days to allow Plaintiff to submit any additional medical records. AR 18. The ALJ stated in his written decision that he did not receive any additional medical records prior to issuing his decision.[2] AR 18.

**B. Procedural History**

On July 20, 2016, the ALJ issued a written decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. AR 18-29. In arriving at his decision, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 17, 2014, her alleged onset date.[3] AR 20-21. The ALJ then found that Plaintiff suffered from the following severe impairments: (1) headache disorder; (2) posttraumatic stress disorder; (3) anxiety; and (4) depression. AR 21. The ALJ determined that Plaintiff's remaining impairments were non-severe. AR 21. Further, with regard to the severe impairments, the ALJ found that these impairments, individually or in combination, did not meet or medically equal one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. AR 22-23.

Because he found that Plaintiff's impairments did not meet a Listing, the ALJ then went on to assess Plaintiff's residual functional capacity ("RFC"). AR 23. The ALJ stated that

---
[2] Although Plaintiff's counsel alleges that he submitted the treatment records from Dr. Licona-Sanjuan to the ALJ, albeit without a cover letter, the ALJ apparently did not receive these records. *See* Doc. 19 at 5.
[3] The ALJ noted that Plaintiff had worked after her alleged disability onset date, and that at least some of these post-onset earnings exceeded the limits for substantial gainful activity. AR 20-21. The ALJ nevertheless proceeded to consider Plaintiff's application under the remaining steps of the five-step sequential analysis.

4

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to performing simple, routine tasks. She is limited to occasional contact with the public. *Her time off task – due to headaches and mental health issues – can be accommodated by normal breaks.*

AR 23 (emphasis added). The ALJ concluded that Plaintiff had no past relevant work. AR 27-28. Based on the testimony of a vocational expert, the ALJ then determined at step five that considering Plaintiff's age, education, work experience, and her RFC, there are jobs that exist in significant numbers in the national economy that she can perform. AR 28-29.

Plaintiff appealed the ALJ's decision to the Social Security Appeals Council. AR 1. Plaintiff also submitted the treatment records from Dr. Licona-Sanjuan to the Appeals Council, which the Appeals Council accepted and made part of the administrative record. AR 5, AR 14. The Appeals Council ultimately denied Plaintiff's request for review. AR 1. This appeal followed. Doc. 19.

## II. APPLICABLE LAW

### A. Disability Determination Process

A claimant is considered disabled for purposes of Social Security disability insurance benefits or supplemental security income if that individual is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Social Security Commissioner has adopted a five-step sequential analysis to determine whether a person satisfies these statutory criteria. *See* 20 C.F.R. §§ 404.1520, 416.920. The steps of the analysis are as follows:

(1) Claimant must establish that she is not currently engaged in "substantial gainful

activity." If Claimant is so engaged, she is not disabled and the analysis stops.

(2) Claimant must establish that she has "a severe medically determinable physical or mental impairment . . . or combination of impairments" that has lasted for at least one year. If Claimant is not so impaired, she is not disabled and the analysis stops.

(3) If Claimant can establish that her impairment(s) are equivalent to a listed impairment that has already been determined to preclude substantial gainful activity, Claimant is presumed disabled and the analysis stops.

(4) If, however, Claimant's impairment(s) are not equivalent to a listed impairment, Claimant must establish that the impairment(s) prevent her from doing her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [Claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* § 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of Claimant's past work. Third, the ALJ determines whether, given Claimant's RFC, Claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled and the analysis stops.

(5) At this point, the burden shifts to the Commissioner to show that Claimant is able to "make an adjustment to other work." If the Commissioner is unable to make that showing, Claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

**B. Standard of Review**

A court must affirm the denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 800-01 (10th Cir. 1991). In making these determinations, the reviewing court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). For example, a court's disagreement with a decision is immaterial to the substantial evidence analysis. A decision is supported by substantial

evidence as long as it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support [the] conclusion." *Casias*, 933 F.3d at 800. While this requires more than a mere scintilla of evidence, *Casias*, 933 F.3d at 800, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

Furthermore, even if a court agrees with a decision to deny benefits, if the ALJ's reasons for the decision are improper or are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). As a baseline, the ALJ must support his or her findings with specific weighing of the evidence and "the record must demonstrate that the ALJ considered all of the evidence." *Id.* at 1009-10. This does not mean that an ALJ must discuss every piece of evidence in the record. But, it does require that the ALJ identify the evidence supporting the decision and discuss any probative and contradictory evidence that the ALJ is rejecting. *Id.* at 1010.

### III. ANALYSIS

Plaintiff argues that the ALJ failed to properly consider the impact of the headache disorder on her ability to work. Doc. 19 at 4-5. Specifically, Plaintiff argues that the medical records and her hearing testimony do not support the ALJ's RFC finding that any time Plaintiff spends off task due to headaches can be accommodated by normal breaks in the workday. Upon review of the ALJ's written decision, however, the Court concludes that the ALJ's RFC finding regarding the headache disorder is consistent with the objective medical evidence in the record and not legally erroneous.

In his written decision, the ALJ determined that the headache disorder was less severe than Plaintiff alleged. The ALJ explained that "the evidence of record, including the limited objective treatment records, does not support the extent of the limitations that [Plaintiff] alleges" and that "[d]espite her allegations of disabling limitations, [Plaintiff] has obtained little care for her impairments . . . [and her] characterization of her headache pain and symptoms are inconsistent with the objective treatment records." AR 27; *see also* AR 24 (explaining that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and the other evidence in the record.").

The ALJ explicitly summarized the limited medical evidence before him regarding the headache disorder -- which consisted solely of Dr. Bath's treatment notes from two visits in 2015. AR 25. The ALJ noted that Dr. Bath prescribed medication to treat the headaches, and that, at a follow-up appointment, Plaintiff reported the medication was "helpful and that her pain level was 0/10." *Id*. The ALJ further noted that state agency examiner, Dr. Abercrombie, MD, reviewed Plaintiff's medical records (including Dr. Bath's treatment notes) and opined in March 2016 that Plaintiff did not have any severe physical impairments. *Id*. The ALJ also noted that although Plaintiff testified she previously sought treatment from a neurologist presumably for the headaches, no records for this treatment were ever submitted to ALJ despite the ALJ leaving the record open after the hearing to submit any additional medical records. *Id*. Thus, it is readily apparent that the ALJ did not think any work-related limitations due to the headaches were necessary in the RFC. Despite this finding, the ALJ decided to "give [Plaintiff] the benefit of the doubt" by finding that she "has the severe physical impairment of headache disorder." *Id*. And he then added in the RFC that while Plaintiff "might be off task during the workday due to pain, . . .

8

this time off task could also be accommodated by normal breaks." *Id*.

The Court concludes that the ALJ adequately supported his RFC determination with citation to the limited objective medical evidence of record and that he provided reasons for discounting Plaintiff's testimony regarding the severity of the headache disorder. *See Lax*, 489 F.3d at 1084 ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."). The ALJ's RFC determination was reasonable and consistent with the objective medical evidence in the record. *See Glenn v. Shalala*, 21 F.3d 983, 988 (10th Cir. 1994) (the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). Despite Plaintiff's allegations concerning the frequency and severity of the headaches, the medical records show that she sought limited treatment for the headaches and that medication was effective in reducing her symptoms. *See Nickel v. Berryhill*, 2017 WL 5761612, at *4 (W.D. Okla. Nov. 28, 2017) ("[Plaintiff's] allegations regarding the severity of her headaches and the impact they would have on her ability to work were solely subjective, requiring the ALJ to evaluate her veracity. If a medication effectively reduces a claimant's symptoms, that fact can weigh against the claimant."); *See Branum v. Barnhart*, 385 F.3d 1268, 1273-1274 (10th Cir. 2004) ("When a claimant attests to having disabling pain or fatigue, factors relevant to a proper credibility determination include: the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.").

Furthermore, although Plaintiff's treatment records from Dr. Licona-Sanjuan were not part of the medical record before the ALJ, these records do not undercut the ALJ's findings regarding the severity of the headache disorder. *See Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017) ("When a claimant submits new evidence to the Appeals Council and the Council accepts that evidence, it becomes part of the administrative record for the district court to consider in performing its substantial-evidence review."). Significantly, both providers Plaintiff saw regarding the headache disorder -- Dr. Bath and Dr. Licona-Sanjuan – noted that medication resulted in significant improvement in the frequency and intensity of the headaches. That medication was effective in reducing Plaintiff's symptoms further supports the ALJ's RFC determination. In sum, the ALJ fully supported his RFC determination with citation to the medical evidence in the record and stated reasons for discounting Plaintiff's testimony regarding the severity of the headache disorder. *Cf. Boswell v. Astrue*, 450 F. App'x 776, 779 (10th Cir. 2011) (ALJ's decision clearly showed that ALJ considered claimant's headache complaints when formulating RFC where ALJ summarized claimant's hearing testimony regarding headaches and reviewed the medical record related to headaches and their treatment, but pain attributable to headaches did not demonstrate claimant was precluded from substantial gainful employment).

## IV. CONCLUSION

Based on the foregoing, the Court **denies** Plaintiff's Motion (Doc. 19) and affirms the Commissioner's decision denying Plaintiff benefits.

_____
UNITED STATES MAGISTRATE JUDGE
**Sitting by Consent**